GEORGE BONDIES, LATE MASTER AND PART OWNER OF THE STEAM-BOAT KATE, INTERVENING, &C., APPELLANT; *v.* JAMES P. SHERWOOD, JOSEPH McCLELLAND, AND BARNEY McGINNIS, LIBELLANTS.

Where there was a contract for raising a sunken vessel upon certain stipulation, the party who raised the vessel cannot abandon it, and claim salvage in a court of admiralty.

This court does not now decide whether, in suits for salvage, the suit may be in personam and in rem jointly. The question is still an open one.

Nor does it decide whether the maritime law of salvage applies to a vessel engaged in the internal trade of a State, proceeding from a port in the same, up a river wholly within the same.

THIS was an appeal from the District Court of the United States for the eastern district of Texas, sitting in admiralty.

The facts of the case are stated in the opinion of the court.

The District Court decreed that the libellants (Sherwood, McClelland, and McGinnis) should recover the sum of fifty per cent. salvage upon $5,150, which sum was adjudged to the libellants against said steamboat Kate, and against George Bondies, the owner thereof; the money to be raised by a sale of the steamboat, and, in case of a deficiency, execution was to issue against Bondies, to be levied and collected on the estate, real and personal, credits and effects, of the said Bondies, wherever the same may be found.

From this decree Bondies appealed to this court.

It was submitted upon a printed brief by *Mr. Hale* and *Mr. Sherwood* for the appellants, no counsel appearing for the appellees.

The counsel for the appellants, as the principal point in the case, contended that the libellants could not set up that the contract had been mutually abandoned, and their claim to be aggrieved by the refusal of Bondies to comply with its terms. They must rest upon their allegation of a rescission of the contract, of which there is no proof whatever.

Mr. Justice GRIER delivered the opinion of the court.

The appellees, describing themselves as ship carpenters, residing in Galveston, filed their libel in the district court of Texas against the steamboat Kate, and against Bondies, late master and owner, in a "cause of salvage, civil and maritime."

They charge that the steamboat left the port of Galveston, for ports and places on the Trinity river, in said district of Texas, laden with merchandise. That the boat was snagged and sunk in the river near Morse's bluff, in Liberty county.

That on the 24th of April, 1856, the libellants entered into an article of agreement, under seal, with Bondies, who had become sole owner of both cargo and vessel, to raise the vessel.

In this agreement, the libellants covenant to proceed with

the necessary boats, apparatus, &c., and to raise the steamboat at their own cost in fourteen days after their arrival at the place where it lay, provided they were not hindered by high water; when raised, the boat to be taken to Galveston. Bondies covenants to convey the boat to them, on their payment to him of four thousand dollars, and also to subrogate them to all his claims against the cargo. But, in the mean time, until the covenants of libellants were performed, the legal possession of the boat and cargo was to be and remain in Bondies.

The libel alleges that "this agreement was mutually given up and abandoned." But this averment is not sustained by the evidence. On the contrary, it appears that the libellants proceeded under their contract to raise the vessel, but did not succeed till some time in July. The boat and merchandise being much injured in the operation and by the delay, it turned out that the costs and expenses would exceed the whole value of the boat and cargo when recovered. The bargain was therefore an unprofitable one, and the libellants concluded to repudiate it, and filed this libel for salvage.

Without adverting to the numerous other facts developed in the history of this case, but which cannot affect its merits, it is very plain, that assuming the services rendered by these mechanics to be in the nature of salvage services, and that a court of admiralty had jurisdiction to enforce the contract both against the owner and the boat as a maritime contract, yet the libellants, by their own showing, cannot recover under the contract. And it is equally clear that they cannot repudiate their contract, and libel the vessel far salvage.

(See the Mulgrave, 2 Hagg. Adm., 269, and Abbot on Shipping, 706.)

For this reason alone, the libel must be dismissed.

But there are two other questions which arise on the face of this record, and which it will not be necessary to decide, but which ought not to pass without notice, lest an inference should be drawn from our silence that the court considered them of no importance, or intended to decide them in favor of libellants:

1. By the 19th rule prescribed by this court for practice in

the courts of admiralty, it is ordered, that " in all suits for sal-vage the suit may be *in rem* against the property saved, OR *in personam* against the party at whose request and for whose ben-efit the salvage service has been performed." By reference to Mr. Conklin's treatise, page 42, it will be found that it is the prevailing opinion that both cannot be joined in the same libel. The point has not been brought before this court, and we no-tice it now only to show that it is not now decided.

. 2. The libel shows that the steamboat was engaged in the internal trade of the State of Texas, proceeding from a port in the same, up a river wholly within the same. It is not even alleged that she had a coasting license. That a court of ad-miralty had jurisdiction in such a case, or that the maritime law of wreck and salvage could be applied to it, are questions not made by the pleadings nor noticed in the argument, and therefore are not decided by the court.

Let the libel be dismissed, with costs.